FILED

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

2010 NOV -5 P 3: 50

| | |
|---|---|
| KFORCE INC., a Florida corporation,<br>1001 East Palm Avenue<br>Tampa, Florida 33605<br><br>Plaintiff,<br><br>v.<br><br>KIMBERLY ANNE LOWRY, an individual,<br>15499 Eagle Tavern Lane<br>Centerville, VA 20120<br><br>and<br><br>YOH SERVICES LLC, a Pennsylvania limited liability company,<br>1500 Spring Garden Street<br>Philadelphia, PA 19130<br><br>Defendants. | Civil Action No. 1:10 cv 1257<br>TSE/TRJ |

## VERIFIED COMPLAINT
## (TEMPORARY RESTRAINING ORDER REQUESTED)

Kforce Inc. ("Kforce"), for its Complaint against Kimberly Anne Lowry ("Lowry") and Yoh Services LLC ("Yoh") (jointly referred to hereinafter as "Defendants") avers and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for injunctive relief and damages against, Lowry, a former Kforce employee, and Yoh, Lowry's current employer and a Kforce competitor, arising from Defendants' misappropriation of Kforce confidential information and trade secrets.



## THE PARTIES

2.      Kforce is a Florida corporation with its principal place of business at 1001 East Palm Avenue, Tampa, Florida.  Kforce is a specialty staffing firm providing flexible and permanent staffing solutions for organizations and career management for individuals, primarily in the areas of information technology, finance and accounting, pharmaceutical research, and healthcare, and science.  Specifically, Kforce supplies skilled consultants (hereinafter referred to as "candidates") on a contract basis and candidates for direct-hire to clients who pay Kforce fees for such services.

3.      Defendant Yoh Services LLC is a Pennsylvania limited liability company with its principal place of business at 1500 Spring Garden Street, Philadelphia, Pennsylvania.  Yoh has offices in this District at 14668 Lee Road, Chantilly, Virginia.  Yoh claims to specialize in employee staffing in the areas of aerospace and defense, engineering, federal services, health care, life sciences, information technology, and telecommunications.  Yoh is a direct competitor of Kforce.

4.      Defendant Lowry is an individual citizen of Virginia residing within this District at 5499 Eagle Tavern Lane, Centerville, Virginia.  Lowry is a former Kforce employee and is presently employed by Yoh at its office in Chantilly, Virginia.

## JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as an action between citizens of different States wherein the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as the District wherein the Defendants reside and in which a substantial part of the events or omissions giving rise to the claims occurred.

7. Defendant Lowry is subject to personal jurisdiction in this Court because she lives and works in Virginia.

8. Defendant Yoh is subject to personal jurisdiction in this Court consequent to its registration to conduct business in Virginia and because it maintains an office and regularly conducts business within Virginia.

## FACTUAL ALLEGATIONS

### A. Kforce's Business

9. Kforce has relatively small investments in physical assets, and relatively large investments in developing, maintaining, and managing intangible assets and goodwill – that is, information and relationships. Kforce considers its information, its people, and the relationships those people establish to be its most important assets. Consequently, Kforce protects information about its core employees, candidates, clients, and placement opportunities. All of Kforce's confidential, proprietary and trade secret databases are password protected. Only employees with a "need to know" are given passwords. All employees with passwords are required to sign confidentiality agreements.

10. Kforce has devoted substantial time, financial and other resources, and engaged in extensive recruiting and marketing efforts to establish its client and candidate base and to develop the large quantities of confidential and proprietary information that it uses daily in its business. For example, Kforce contracts with, and pays substantial fees to, commercial "job boards" such as Monster.com in order to obtain access to their proprietary searchable databases

of candidates and resumes. Those databases are not available to the general public as only paying customers are permitted to use them. Kforce provides its employees with passwords that enable them to access those job boards and the information they contain.

11.   Kforce also maintains a proprietary electronic database known as "Recruitmax" ("RM"), wherein it houses a substantial portion of its confidential information and trade secrets. RM is a web-based software application developed by Kforce at significant expense and through the combined efforts of numerous individuals working on behalf of, and at the direction of Kforce.

12.   The information maintained in RM promotes Kforce's ability to efficiently and precisely pair Kforce clients with qualified staffing candidates though an array of proprietary methods belonging to Kforce.  RM contains confidential, proprietary, and trade secret information about both clients and candidates.

13.   Kforce has established a number of procedures and systems to protect the proprietary and confidential information in the RM database. Access is limited and password protected. Kforce electronically monitors and records the usage of RM by the limited categories of employees who have access. Kforce has also instituted strict confidentiality protocols for those employees to follow regarding RM.

14.   Every time such a Kforce employee attempts to log on to RM, the following warning message appears, and the software does not allow the user to proceed without first acknowledging that the user agrees to the terms of use:

> WARNING: The information on the Recruitmax system is confidential and proprietary. Unauthorized use, duplication, transmittal or disclosure of this information is strictly prohibited. System activity is monitored and recorded.

15.   The proprietary and confidential candidate information stored by Kforce on RM includes candidate resumes as well as candidate profiles for each candidate that contain valuable

information compiled by Kforce regarding the candidate's past placements, salary requirements, geographic preferences, and evaluations by the Kforce staff that utilize proprietary Kforce formulas and other assessment tools. The Kforce candidate profiles are the result of a comprehensive review, interview, and proprietary vetting process for each candidate. It is a highly valuable compilation of information regarding qualified skilled personnel that meet the various criteria for candidates that are established by Kforce and Kforce's clients.

16. Kforce has also invested significant time and money in identifying, developing relationships with, and compiling information about clients and placement opportunities. Many placement opportunities simply never become public information; instead, clients share them with one or perhaps a handful of firms with which they have established relationships. Other times companies that have established relationship with clients, learn of opportunities before they become public and, therefore, have an opportunity to fill those positions before they become public.

17. Kforce employees have successfully developed relationships with clients and thereby obtained placement opportunities that were not generally known or available to its competitors. Kforce's staffing specialists also have successfully identified a pool of qualified candidates and placed them into Kforce's system for use by Kforce recruiters. Kforce continually invests time, money, and efforts maintaining its pool of qualified candidates so that there will be candidates available whenever a client needs to add staff as well as maintaining its client base if there are opportunities available when qualified candidates become available.

18. Confidential, proprietary, and trade secret information about clients and candidates, and the personal relationships developed by Kforce with such clients and candidates are critical to the success of Kforce's business.

**B.   Lowry's Kforce Employment**

19.   Kforce hired Lowry in March, 2008, as a Recruiter in the company's Reston, Virginia, office located within this District at 12010 Sunset Hills Road, Suite 200.

20.   Before she came to work for Kforce, Lowry had no experience in the staffing industry.

21.   In consideration of her Kforce employment, Lowry executed an Employment, Non-Disclosure and Non-Solicitation Agreement (the "Contract"). A true and correct copy of the Contract is attached hereto as Exhibit A.

22.   In Paragraph 2 of the Contract, Lowry agreed to exclusively devote her full business time, loyalty and best efforts to Kforce:

> The EMPLOYEE [Lowry] shall exclusively devote his/her full time business time, attention, energy, loyalty and best efforts to the business of the FIRM [Kforce], and shall not, during the time this Agreement is in effect, engage in any other business activity, whether or not such other business activity is pursued for gain, profit, or other pecuniary advantage, unless such business is fully disclosed to and approved in writing by and authorized representative of the FIRM.

23.   In the Contract, Lowry agreed that she would only use Kforce confidential information and trade secrets as authorized by Kforce and as required to perform her duties on behalf of Kforce, that she would promptly return or destroy all expressions of Kforce confidential information and trade secrets upon request, and that she would cooperate with Kforce's efforts to verify such return or destruction:

> **6. Confidential Information.** The EMPLOYEE recognizes and acknowledges that the FIRM has, through the expenditure of substantial time, effort, and money, developed, compiled and/or acquired certain confidential information and trade secrets which are of great value to the FIRM in its operations. The EMPLOYEE further acknowledges and understands that in the course of performing his/her duties for the FIRM, he/she will receive and/or have access to the trade secrets and other confidential information of the FIRM.
>
> The EMPLOYEE agrees that he/she will not make any use of, take, download, publish or disclose, or authorize anyone to use, take, publish or disclose, any of

6

FIRM's trade secrets or other confidential information, for any reason, except to the extent authorized and required in the course of performing his/her duties on behalf of the FIRM. Upon request of the FIRM, the EMPLOYEE will promptly return or destroy all expressions of trade secrets and confidential information in his/her possession and control. EMPLOYEE shall cooperate with the FIRM's efforts to verify such return or destruction.

24. The Contract defines "trade secrets and other confidential information" to include, without limitation:

> (a) client or prospective client lists and client or prospective client contact information (including but not limited to business cards, contact persons, and hiring managers); (b) client job openings and job orders and client pricing information; (c) actual or prospective applicant, employment candidate, employee or consultant lists; (d) actual or prospective applicant, employment candidate, employee or consultant qualifications, contact information, and resumes; (e) actual or prospective applicant, employment candidate, employee or consultant compensation and benefits; and (f) other client, applicant, employment candidate, employee or consultant data or information.

25. Lowry also agreed that all information and materials she used or received in the course of her Kforce employment would remain Kforce's exclusive property and that she would return all such property to Kforce upon the termination of her employment:

> **7. Return of FIRM Property.** All information, data, lists, files, business forms, manuals, policies, training materials, communications and all other intellectual property compiled, maintained, received or used by the EMPLOYEE in the course of his/her employment with the FIRM is and shall remain at all times the exclusive property of the FIRM. Upon termination of the EMPLOYEE's employment for any reason, the EMPLOYEE shall immediately return to the FIRM any and all tangible and intangible property of the FIRM, in whatever form, in the EMPLOYEE's possession, custody or control, including but not limited to trade secrets and confidential information as defined in the preceding section.

26. As a further part of her Contract with Kforce, Lowry agreed that she would not, directly or indirectly, solicit or accept business from Kforce clients with whom she had contact while employed by Kforce, or attempt to divert or assist others to divert Kforce client business to a competitor, for a period of one year after leaving Kforce's employ:

**8. Non-Solicitation Covenants.** a) <u>Covenants relating to clients</u>: the EMPLOYEE agrees that upon termination of his/her employment for any reason, the EMPLOYEE will not, for a period of twelve (12) months from the date of termination, directly or indirectly solicit or accept business that is competitive with the FIRM from any client with whom EMPLOYEE had contact while employed by the FIRM, nor will the EMPLOYEE for such period directly or indirectly attempt to divert or assist others to divert any such clients' business from the FIRM to a competitor.

27.     Lowry also agreed that she would not, directly or indirectly, solicit, recruit, hire, or place on assignment any candidate with whom she had contact while a Kforce employee, or attempt to divert or assist another to divert such candidate away from Kforce, for a period of one year after leaving Kforce's employ:

[8]b) <u>Covenants relating to staffing candidates, applicants, temporary employees and consultants</u>: the EMPLOYEE further agrees that upon termination of his/her employment for any reason, the EMPLOYEE will not, for a period of a period of twelve (12) months from the date of termination, directly or indirectly solicit, recruit, hire, or place on assignment any staffing candidate, applicant, temporary employee or consultant with whom the EMPLOYEE had contact while employed by the FIRM, nor will EMPLOYEE directly or indirectly attempt to divert or assist others to divert such candidates, applicants, temporary employees and consultants from the FIRM.

28.     In her position at Kforce, Lowry was responsible for identifying, engaging, recruiting and matching qualified candidates to support client needs. In addition, Lowry was required to evaluate market conditions and ensure that candidate inventory population stays at appropriate levels to accommodate anticipated client demand and to maintain relationships with Candidates not currently on assignment.

29.     Throughout her Kforce employment Lowry received, had access to, and accessed, detailed confidential, proprietary, and trade secret information about Kforce's clients and candidates, including direct access to RM.

30.     Throughout her Kforce employment Lowry maintained confidential and proprietary relationships with Kforce's clients and candidates.

31. Lowry was one of Kforce's top recruiters. In 2009, Lowry's efforts earned her recognition and qualified her to participate in the Kforce incentive award trip.

C.  **Defendants' Unlawful Activities**

32. In or about the beginning of October, 2010, Lowry communicated with Joseph McDonald, a Yoh vice-president and former Kforce manager, about possible employment as a recruiter for Yoh. McDonald commenced employment with Kforce in 2000 and rose to the position of Market Vice President in the Reston Technology office at the time his employment ended in 2008.

33. While working for Kforce, McDonald's responsibilities included maintaining client relationships, sales and marketing, and supervising Kforce account managers, account executives and recruiters. Consequent to that employment, McDonald has an extensive understanding of Kforce's procedures and protocols relating to Kforce's confidential and trade secret client and candidate information, as well as the contractual restrictions protecting such information. McDonald was also well aware of Lowry's access to Kforce's highly valuable confidential information relating to clients and candidates, as well as its potential usefulness to Yoh.

34. On October 7, 2010, after speaking with McDonald, Lowry sent an email from her Kforce business email account to her personal email account to which she attached a spreadsheet (the "October 7 Spreadsheet") that contained Kforce confidential and trade secret information for more than 800 Kforce staffing candidates. The spreadsheet included candidate names, job positions and specialties, locations, phone numbers, email addresses, work histories, work status, contact dates, salary information, and important qualifying information such as

security clearances and credit histories. The spreadsheet also identified the various Kforce clients with whom the candidates had been placed.

35. All of the candidates identified on the October 7 Spreadsheet are contained in Kforce's confidential RM database. The information in the October 7 Spreadsheet was compiled, developed, and maintained by Kforce at great expense of time, money, and effort, and would be extremely valuable to a Kforce competitor. The information contained in the Spreadsheet is not readily available to the public, but rather represents the distilled product of literally years of effort by a large number of Kforce employees to identify, qualify and compile candidates in select skill categories. In addition, the list identifies client companies that have historically turned to staffing firms to acquire specialized talent, and the type of talent they require. Again, there is no such list readily available to the public, and its value in the staffing industry is enormous.

36. Lowry had no legitimate reason to email the October 7 Spreadsheet – or any other Kforce confidential and trade secret information – to her personal email account.

37. The day after sending the October 7 Spreadsheet to her personal email account, Lowry interviewed with McDonald for a recruiter position with Yoh.

38. Lowry accepted Yoh's employment offer on October 13, 2010.

39. The next day, a Yoh human resources manager asked Lowry to send Yoh a copy of her Kforce "non-compete" agreement (*i.e.*, the Contract).

40. On October 15, Lowry informed her supervisor, Kevin Rice, that she had accepted employment at Yoh, a Kforce competitor. Rice informed Lowry that, because she was going to work for a competitor, Kforce would conduct an internal review of her files and accounts. Lowry told Rice that she understood and agreed to the review and that she had "not

10

done anything wrong." Lowry made a point of emphasizing that she had not sent any confidential Kforce information "home."

41. Lowry resigned her Kforce employment on October 15, 2010. Kforce subsequently discovered Lowry's October 7 email and the attached Spreadsheet in its review of her archived Kforce email files.

42. There is no legitimate purpose for Lowry's continued possession of the Kforce confidential and trade secret client and candidate information.

43. The only purposes for Lowry to possess the Kforce confidential and trade secret client and candidate information would be to make her self more attractive to Yoh, to benefit Yoh, and to assist Yoh and McDonald in Yoh's business.

44. Lowry's conduct demonstrates an intent to misappropriate Kforce's protected trade secrets and confidential and proprietary information for her unauthorized and unlawful use in connection with her Yoh employment.

45. Kforce believes that Lowry has shared the Kforce confidential and trade secret candidate information with Yoh and that Defendants are using that information to compete unfairly with Kforce.

46. Kforce further believes that Yoh is receiving the benefit of Lowry's unlawful conduct under circumstances in which Yoh knows or should know of the violation of Kforce's legal rights.

**D.   Irreparable Harm to Kforce**

47. Defendants' misappropriation of the Kforce confidential and trade secret information has caused and continues to cause Kforce to suffer irreparable harm that is substantial but difficult or impossible to precisely measure.

48. Defendants' continued possession and use of the Kforce confidential and trade secret information compromises Kforce's relationships with is clients and staffing candidates.

49. The competitive advantage that the Kforce confidential and trade secret information provides over those in the staffing industry who do not know or use it, will be lost if Defendants are allowed to continue to possess and use that information in any way to solicit, recruit, hire, place on assignment, or divert from Kforce any staffing candidate indentified therein.

50. Kforce has no adequate remedy at law in that it is impossible to determine the value of any loss of business or goodwill, including loss of clients and/or candidates occasioned by the disruption of the business relationship between Kforce and its clients and candidates.

## COUNT I
### (Breach of Contract against Defendant Lowry)

51. Kforce restates and incorporates the allegations in Paragraphs 1-50 above as if fully set forth herein.

52. The Contract is reasonable, valid, enforceable and supported by adequate consideration.

53. Kforce has fulfilled all of its material obligations under the Contract.

54. The loyalty provision set forth in paragraph 2 of the Contract is reasonable and enforceable.

55. The confidentiality provision set forth in paragraph 6 of the Contract is reasonable and enforceable.

56. The non-solicitation provision set forth in paragraph 8 of the Contract is reasonable and enforceable.

57. Defendant Lowry breached the Contract by taking Kforce confidential and trade secret information without Kforce's consent for use other than as required for her Kforce employment.

58. Defendant Lowry breached the Contract by engaging its efforts intended to improve the business position of a Kforce competitor while still employed by Kforce.

59. Kforce believes that Defendant Lowry has breached and will continue to breach the Contract by disclosing Kforce confidential and trade secret information without Kforce's consent, for purposes other than as required for her Kforce employment.

60. Kforce believes that Defendant Lowry has breached and will continue to breach the Contract by using Kforce confidential and trade secret information without Kforce's consent, for purposes other than as required for her Kforce employment.

61. Kforce has suffered and continues to suffer damages consequent to Defendant Lowry's breaches of the Contract.

62. As the direct and proximate result of Defendant Lowry's breaches of the Contract, Kforce has been, and will be, irreparably harmed.

63. Upon information and belief, in the absence of injunctive relief, Defendant Lowry will continue to breach the Contract.

## COUNT II
### (Breach of Fiduciary Duty against Defendant Lowry)

64. Kforce incorporates by reference Paragraphs 1-50 above as if fully set forth herein.

65. As a Kforce employee, Defendant Lowry owed Kforce a fiduciary duty of loyalty and confidentiality, including the fiduciary duty not to use Kforce confidential and trade secret information obtained in the course of her Kforce employment to compete with Kforce.

66. Defendant Lowry's fiduciary duty not use Kforce confidential and trade secret information obtained in the course of her Kforce employment to compete with Kforce survived termination of her employment with Kforce and is a continuing duty.

67. Defendant Lowry violated her fiduciary duty to Kforce by taking Kforce confidential and trade secret information, without Kforce's consent, for purposes other than, and contrary to, Kforce's interests.

68. Kforce believes that Defendant Lowry violated and will continue to violate her fiduciary duty to Kforce by disclosing Kforce confidential and trade secret information, without Kforce's consent, for purposes other than, and contrary to, Kforce's interests.

69. Kforce believes that Defendant Lowry further violated and will continue to violate her fiduciary duty to Kforce by using Kforce confidential and trade secret information without Kforce's consent, for purposes other than, and contrary to, Kforce's interests.

70. Kforce has suffered and continues to suffer damages consequent to Defendant Lowry's breaches of her fiduciary duties.

71. As the direct and proximate result of Defendant Lowry's breaches of her fiduciary duties, Kforce has been and will be irreparably harmed.

72. Upon information and belief, in the absence of injunctive relief, Defendant Lowry will continue to breach her fiduciary duty to Kforce.

73. Defendant Lowry's acts in breach of her fiduciary duty were in willful and wanton disregard for Kforce's rights such that Kforce is entitled to an award of punitive damages.

## COUNT III
### (Misappropriation of Trade Secrets)

74. Kforce incorporates by reference Paragraphs 1-50 above as if fully set forth herein.

75. The October 7 Spreadsheet contained Kforce confidential and trade secret information.

76. Kforce derives independent economic value from such information not being generally known to, and not being readily ascertainable by proper means by, the public and Kforce's competitors.

77. Kforce has taken reasonable measures to protect the secrecy of its trade secrets, including, but not limited to maintaining all confidential and trade secret information in proprietary, password protected databases, and requiring that all employees with access to confidential and trade secret information sign confidentiality agreements.

78. Defendant Lowry knew or reasonably should have known that she had a duty to maintain the secrecy of such trade secrets and to limit their use and disclosure.

79. Defendant Lowry misappropriated Kforce confidential and trade secret information by taking that information without Kforce's consent, for purposes other than, and contrary to, Kforce's interests.

80. Kforce believes that Lowry has disclosed the Kforce confidential and trade secret candidate information to Yoh

81. Yoh knew or reasonably should have known that Defendant Lowry obtained the Kforce confidential and trade secret information under circumstances giving rise to a duty to maintain its secrecy or limit its use.

82. Kforce believes that Defendants have used and continue to use Kforce confidential and trade secret information without Kforce's consent, for purposes other than, and contrary to, Kforce's interests.

83. Defendants' misappropriation of Kforce's trade secrets has and will continue to cause Kforce significant and irreparable harm.

84. Kforce has suffered and continues to suffer damages consequent to Defendants' misappropriation of Kforce's trade secrets.

85. Kforce's damages include both the actual loss caused by the misappropriation and the unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss.

86. Upon information and belief, in the absence of injunctive relief, Defendants will continue to misappropriate Kforce's trade secrets.

87. Defendants' acts of misappropriation of Kforce's trade secrets were malicious or in willful and wanton disregard for Kforce's rights such that Kforce is entitled to an award of punitive damages.

88. Actual and threatened misappropriation must be enjoined.

### COUNT IV
**(Conspiracy to Harm Business)**

89. Kforce incorporates by reference Paragraphs 1-50 above as if fully set forth herein.

90. Defendants conspired to and did intentionally, purposefully, and without lawful justification, injure Kforce's business.

91. Kforce has suffered and continues to suffer damages as a result of Defendants' acts.

92. Defendants' acts were malicious such that Kforce is entitled to an award of punitive damages.

### COUNT VI
**(Tortious Interference with Existing Contract against Defendant Yoh)**

93. Kforce incorporates by reference Paragraphs 1-50 above as if fully set forth herein.

94. Kforce had a valid and enforceable contract with Lowry.

95. Defendant Yoh knew that Lowry had a contract with Kforce that restricted her use and disclosure of Kforce confidential and trade secret information.

96. Defendant Yoh intentionally and unjustifiably induced, and continues to induce, Lowry to breach her contract with Kforce.

97. As the direct and proximate result of Defendant Yoh's interference with Kforce's contract with Lowry, Kforce has been and will be irreparably harmed.

98. Kforce has suffered and continues to suffer damages consequent to Defendant Yoh's interference with Kforce's contract with Lowry.

99. Upon information and belief, in the absence of injunctive relief, Defendant Yoh will continue to interfere with Kforce's contract with Lowry.

100. Defendant Yoh's interference with Kforce's contract with Lowry was malicious or in willful and wanton disregard for Kforce's rights such that Kforce is entitled to an award of punitive damages.

**WHEREFORE**, Kforce respectfully requests that a judgment be entered in its favor as follows:

  A. Temporarily and permanently enjoining Defendants from disclosing or using any Kforce confidential and trade secret information, including, but not limited to, the confidential and trade secret information set forth in the October 7 Spreadsheet;

  B. Temporarily and permanently enjoining Defendants from directly or indirectly contacting, soliciting, recruiting, hiring, or placing on assignment any of the candidates identified in the October 7 Spreadsheet;

  C. Compelling Defendants to immediately return all Kforce confidential and trade secret information in their possession, custody or control, including, but not limited to, the confidential and trade secret information set forth in the October 7 Spreadsheet, and to permanently delete all electronic copies of such information;

  D. Awarding compensatory damages in an amount in excess of $75,000;

  E. With respect to Count III only, awarding exemplary damages, costs and attorneys fees as provided by statute;

  F. With respect to Count IV only, awarding treble damages, costs and attorneys fees as provided by statute;

  G. With respect to Counts II and III awarding punitive damages;

  H. Awarding post-judgment interest; and

  I. Granting such other and further relief as is necessary and appropriate.

THOMPSON HINE LLP

Dated: November 5, 2010  By: *[signature]*
Eric N. Heyer
Virginia Bar No. 73037
1920 N Street, N.W., Suite 800
Washington, D.C. 20036
Phone: (202) 331-8800
Fax: (202) 331-8330
eric.heyer@thompsonhine.com

Of Counsel:

William Josey
Kforce Inc.
1001 E. Palm Ave.
Tampa FL 33605
(813) 552-2912 Telephone

## VERIFICATION

On behalf of Kforce, Inc. and based on information known or reasonably available to Kforce, I verify, under penalty of perjury under the laws of the United States of America, that the facts set forth in the foregoing Verified Complaint are true and correct.

                                                                          Kevin Rice,
Market President of Kforce Reston
Tech Flex office

Executed this 5th day of November, 2010.